# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* N.C.

No. 17-0789 (Wetzel County 16-JA-06)

FILED

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.C., by counsel Michael B. Baum, appeals the Circuit Court of Wetzel County's July 11, 2017, order terminating his parental rights to N.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), David C. White, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when less-restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2013, prior to the initiation of the instant proceedings, N.C.'s mother voluntarily relinquished her parental rights to N.C., petitioner's biological child, and N.C.'s half-siblings, who were not petitioner's biological children.[2] Because petitioner was incarcerated around that time, N.C. was placed in the custody of the DHHR and remained out of petitioner's care.

In July of 2016, the DHHR filed the instant abuse and neglect petition against petitioner, alleging that, due to his repeated and extensive incarcerations, he had "demonstrated the settled purpose to forego the duties and parental responsibilities" to N.C. Specifically, the DHHR noted that petitioner violated the terms of his home incarceration in May of 2013 and remained incarcerated until February of 2014 for that violation. Petitioner was arrested again in November of 2014 for nine parole violations and remained incarcerated until October of 2015. In February of 2016, petitioner was arrested for violating parole and remained incarcerated at the time the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The child's half-siblings are not at issue in this appeal.

1

petition was filed. The DHHR noted that petitioner's projected release date was April of 2021. Additionally, the DHHR alleged that when not incarcerated, petitioner initiated limited contact with N.C. and failed to maintain gainful employment and suitable housing.

The circuit court held an adjudicatory hearing in February of 2017. Petitioner's parole officer testified that petitioner had recently been denied parole and would not be eligible again until February of 2018. A DHHR worker testified that petitioner had never contacted her to check on the child and failed to maintain housing or employment while not incarcerated. Petitioner then testified that he was currently housed at the Charleston Work Release Center and was unable to contact the DHHR regarding the child because the caseworker changed several times and he needed the correct phone number to be on his call list in order to contact him or her. He stated that while not incarcerated, he had worked in construction and was in the process of fixing his own house in order to have the child there. Petitioner also advised that he had been taking parenting classes and job readiness classes while incarcerated. After hearing evidence, the circuit court found that the child needed permanency as he had resided with his half-siblings in multiple homes and outside of petitioner's care continuously since 2013. The circuit court found that petitioner had been incarcerated several times, adding up to thirty of the past forty-three months, and further noted that should he be granted parole in February of 2018, he will have been incarcerated forty-two of the last fifty-five months. At no time since the child's removal had petitioner provided support to him, nor had he sought more than limited contact. As such, the circuit court adjudicated petitioner as an abusing parent, noting that his intentional parole violations and resulting extensive incarcerations demonstrated the settled purpose to forego the duties and parental responsibilities to the child.

In June of 2017, the circuit court held a dispositional hearing during which it heard the testimony of the DHHR worker and petitioner's parole officer. Petitioner had only contacted the DHHR worker twice since the last hearing to check on the child and his next parole board hearing remained scheduled for February of 2018. Petitioner offered no testimony, but requested that he be granted an alternative disposition pursuant to West Virginia Code § 49-4-604(b) so that the matter could be reviewed after his next parole hearing. The circuit court found that termination was in the child's best interests as he had remained with his half-siblings, and outside of petitioner's care, for the past four years. Further, the circuit court found that petitioner's repeated and extended incarcerations constituted abandonment and that petitioner was unable to fully participate in an improvement period due to his incarceration. Accordingly, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that he could correct the conditions of neglect and that termination was necessary for the child's welfare.[3] It is from this dispositional order dated July 11, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

---

[3]In addition to petitioner's parental rights being terminated, the mother voluntarily relinquished her parental rights in 2013. The permanency plan for N.C. is to be adopted by his foster parents, who are also adopting his two half-siblings.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he was able to correct the conditions of neglect. Specifically, petitioner argues that the circuit court should have granted him a dispositional alternative to termination of his parental rights pursuant to West Virginia Code § 49-4-604(b) as he was in a "superior place to remedy the issues identified in the [p]etition with no disruption to the child." We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(4), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent or parents have abandoned the child[.]"

Here, the circuit court found that petitioner decided to forego his duties and parental responsibilities, constituting abandonment. *See* W.Va. Code § 49-1-201. Petitioner was arrested on an underlying charge of delivery of a controlled substance and was sentenced to home incarceration. However, petitioner violated the terms of his home incarceration and was incarcerated in prison. Petitioner was eventually released on parole but continued to violate the terms of his parole such that he was re-incarcerated twice. After his last violation, petitioner was denied parole and he will not have another parole hearing until February of 2018. Contrary to petitioner's argument, he is not in a "superior place" to correct the circumstances giving rise to the petition as he does not become eligible for parole until February of 2018 and there is no guarantee that he will be released at that time. While petitioner argues that less-restrictive alternatives to termination of his parental rights existed, we have held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code

§ 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Petitioner has been incarcerated off-and-on over the course of several years and the record establishes that he did little to maintain his relationship with or provide for N.C. during that time. The child has been out of his care for more than four years, needs permanency, and desires to be adopted with his half-siblings. Petitioner's assertions that he will be a good parent to the child after he is released on parole are disingenuous when viewed in light of his past re-incarcerations for parole violations. Given petitioner's incarceration and resulting inability to care for the child, we find no error in the circuit court's decision. The circuit court properly found that petitioner was not likely to correct the conditions of abuse in the near future and that termination of his parental rights was in the best interests of the child, whose permanency has been unsettled for over four years. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 11, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

4